## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| RYAN CRAFT, individually, and on behalf of all others similarly situated, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. <u>2:24-CV-104-RWS</u> |
| v. | : : | Complaint – Class Action |
| ALL CONCEPTS, LLC; FAB CREW, LLC; TROY HICKS; and MARK WHITMIRE, | : : : : | |
| Defendants. | : | |

## CLASS ACTION COMPLAINT

Plaintiff Ryan Craft, individually and on behalf of all others similarly situated, and on behalf of the employer-sponsored benefits plans identified herein, files this class action Complaint for fiduciary duty violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically ERISA §§ 502(a)(2), (a)(3), & (g), against All Concepts, LLC; Fab Crew, LLC; and individual Defendants Troy Hicks and Mark Whitmire in their capacities as fiduciaries of certain employer-sponsored health, dental and vision benefit plans (collectively, "Defendants"), respectfully showing the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.

This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because Defendants do business in, reside in, and the actions and harms alleged took place in, this District.

2.

All administrative remedies have been exhausted and/or further exhaustion would be futile.  Plaintiffs are entitled to have this Court determine their claims.

3.

Plaintiff Ryan Craft is a former employee of Defendants and was a participant in the relevant employer-sponsored health, dental and vision plans (collectively, the "Plans") during the class period.  Mr. Craft and his family suffered individual injury through Defendants' failure to remit premium payments to the insurance carriers under the Plans.

4.

Mr. Craft has standing to bring claims on behalf of a class of similarly situated individuals because the harms alleged to all class members can be traced to the same challenged conduct: the Defendants' failure to remit premium payments to the insurance carriers under the Plans for the benefit of their employees enrolled in the

Plans.  Upon information and belief, Defendants similarly failed to remit premium payments for other participants; Plaintiff seeks relief on behalf of himself and all others similarly situated.  As the named representative of the Class, Mr. Craft files this action on behalf of current and former employees of Defendants who are similarly situated with respect to Defendants' failure to remit premium payments under the relevant Plans.

5.

Defendants All Concepts, LLC and Fab Crew, LLC are corporations headquartered in Hall County, Georgia.  Both All Concepts, LLC and Fab Crew, LLC may be served with process through their registered agent, Troy L. Hicks, at 2323 Browns Bridge Road, Suite C, Gainesville, GA 30504.

6.

Defendants All Concepts, LLC and Fab Crew, LLC, either jointly or in concert, constitute Plaintiffs' "employers" and are both sponsors and fiduciaries of the welfare benefit plans identified herein.

7.

Defendant Troy Hicks is an individual and fiduciary who may be served with process at his business address, 2323 Browns Bridge Road, Gainesville, Georgia 30504.

8.

Defendant Mark Whitmire is an individual and a fiduciary residing at 2331 Lorraine Street, NE, Brookhaven, Georgia 30319, where he may be served with process.

**FACTS**

9.

Plaintiffs/class members are current or former employees of All Concepts, LLC and Fab Crew, LLC who were participants in the employer-sponsored BPA Best Life Plan (a tier of Cigna) for health insurance coverage (the "BPA Health Plan") or United Health Care (the "UHC Health Plan") (each health plan covered health benefits over a different period of time), and a Colonial Life Plan for dental and vision coverage (the "Dental and Vision Plan"), (collectively, the "Plans"). These Plans constitute employee welfare benefit plans as defined by ERISA. *See* 29 U.S.C. § 1002(1).

10.

Executive employees enrolled in the BPA Health Plan and UHC Health Plan with premium payments under the plan to be paid for at 100% by Defendants. Non-executive employees enrolled in the BPA Health Plan and UHC Health Plan paid premiums for such coverage, which were regularly deducted from their paychecks.

11.

Plaintiffs also enrolled in the Dental and Vision Plan, for which premium payments were regularly deducted from their paychecks.

12.

Defendants failed to remit premium payments to the insurers (either in the correct amount, or at all), which prevented the Plans from having the insurance funding to pay benefits to participants and beneficiaries, and resulted in termination of Plaintiffs' health insurance, dental, and vision benefits.

13.

Mr. Craft learned that his BPA Health Plan coverage had been terminated for non-payment of premiums after receiving over $55,000 in medical bills related to the birth of his child in November of 2022. Prior to his child's birth, the hospital had verified that his coverage was in place.

14.

Defendants represented to Mr. Craft that they were "working with the insurance company" to understand the cancellation of insurance coverage. To avoid the outstanding medical bills going into collections, Mr. Craft was forced set up a payment plan with the healthcare provider. Initially, Defendants paid Mr. Craft $715 per month to cover these outstanding medical bills but stopped paying after only five months.

15.

On November 3, 2023, Mr. Craft received a notice of cancellation backdated to July 31, 2023, indicating that his UHC Health Plan coverage (which was the employer-sponsored policy offered by Defendants beginning in January 1, 2023) was cancelled for non-payment of premiums.

16.

On November 27, 2023, Mr. Craft was notified that his dental and vision benefits had been terminated backdated to October 6, 2022 for non-payment of premiums. The premium amounts had been continuously deducted from Mr. Craft's paychecks prior to, and even after, October 6, 2022 but Defendants failed to remit these deductions to the insurance carriers.

17.

Plaintiffs have paid substantial unreimbursed sums out of pocket for health care, dental care, and vision care, which should have been covered by insurance.

18.

Defendants have failed to reimburse the Plaintiffs for expenses incurred due to the termination of coverage and failed to reinstate benefits. Defendants have kept the premium payments that were promised to be paid to the insurance carriers for Plaintiffs' coverage (including both monies directly deducted from Plaintiffs' paychecks and monies to be paid to the insurance carriers directly from Defendants).

19.

All Defendants are fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law interpreting that section. Defendants had discretionary authority or control over the management of the plans, the management and disposition of its assets, and/or had discretionary authority for plan administration.

20.

As set forth herein, Defendants took actions or committed omissions with regard to Plaintiffs' benefits under the Plans, and such acts or omissions were fiduciary acts or omissions undertaken by them as fiduciaries pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

## LEGAL BACKGROUND

21.

ERISA § 502(a) provides the enforcement mechanisms for breaches of ERISA's requirements, including Sections 502(a)(3) and (a)(2), for breaches of fiduciary duties, and Section 502(g), a claim for attorneys' fees and costs of bringing this action.

22.

For example, a participant or beneficiary may bring an action under ERISA § 502(a)(3), for a breach of fiduciary duty: "(A) to enjoin any act or practice which

violates any provision of this subchapter or the terms of the plan, or (B) to obtain

other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

provisions of this subchapter or the terms of the plan … ." 29 U.S.C. § 1132(a)(3).

Fiduciaries face potential personal liability.  ERISA § 502(a)(2) allows a participant

or beneficiary to bring suit for a breach of fiduciary duty for damages incurred on

behalf the plan. 29 U.S.C. § 1132(a)(2).

23.

A fiduciary for purposes of ERISA is defined as someone "who exercises any

discretionary authority or discretionary control respecting management of [the plan]

or exercises any authority or control respecting management or disposition of [the

plan] assets" or has "any discretionary authority or discretionary responsibility in

the administration of such plan." 29 U.S.C. § 1002(21)(A).

24.

ERISA §§ 404(a)(l)(A) & (B) provide, in pertinent part, that a fiduciary shall

discharge its duties with respect to a plan solely in the interest of the Participants,

for the exclusive purpose of providing benefits to participants and their beneficiaries,

and with the care, skill, prudence, and diligence under the circumstances then

prevailing that a prudent man acting in a like capacity and familiar with such matters

would use in the conduct of an enterprise of a like character and with like aims.

25.

Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. § 1103(c)(1).

26.

The fiduciary duties under ERISA §§ 404(a)(l)(A) & (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

(a) The duty to maintain and protect plan assets, including in this instance the welfare Plans' assets and funding mechanisms, and includes making decisions that are in the best interest of plan beneficiaries;

(b) A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of participants; and

(c) A duty to discharge fiduciary duties with respect to the plan solely in the interest of the participants, for the exclusive purpose of providing benefits to participants with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. *See*

29 U.S.C. § 1104. Cases alleging violations of these duties, in whole or in part, are viewed on par with all other similar-type allegations, and fiduciaries are not entitled to any "presumption" that they have acted prudently.

27.

Fiduciaries face potential personal liability. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1338-39 (11th Cir. 2006); *see also Maier v. Bounds Performance, Inc.*, Case No. 3:22-cv-00339, 2023 U.S. Dist. LEXIS 215331 (M.D. Tenn., Nov. 9, 2023) (Magistrate's R&R finding misappropriation of ERISA-governed policy premiums to be an actionable violation of ERISA subjecting fiduciaries to individual liability), *R&R adopted*, 2023 U.S. Dist. LEXIS 214072 (Dec. 1, 2023). ERISA also imposes co-fiduciary duties on plan fiduciaries: Section 405(a) of ERISA, 29 U.S.C. § 1105(a), allows a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary, enabling another fiduciary to commit a breach, or knowingly failing to cure a breach.

## CLASS ACTION ALLEGATIONS

28.

Plaintiff further brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff asserts a class of individuals in the United States who were harmed by Defendants' conduct in that, *inter alia*, Defendants failed to remit premium payments to the insurers for Plaintiffs' coverage under the Plans (the

10

"Participant Class"). The Participant Class is broken down into three subclasses, one of individuals who were executive employees whose health coverage premium payments were to be paid directly by Defendants (the "Health Plan Executive Subclass"), one of individuals who were not executive employees whose health coverage premium payments were deducted from their paychecks (the "Health Plan Non-Executive Subclass"), and one of individuals whose premium payments for the Dental and Vision Plan was deducted from their paychecks (the "Dental and Vision Plan Subclass").

29.

The Participant Class is defined as follows: "all persons who reside in the United States, who during the applicable time period, (1) are participants in the Plans, and (2) have had their premium payments inappropriately withheld from the insurance carrier(s) by Defendants.

30.

The Health Plan Executive Subclass is defined as follows: "all persons who reside in the United States, who during the applicable time period, (1) are participants in the BPA Health Plan and/or the UHC Health Plan, and (2) are individuals entitled to have their premium payments paid at 100% by Defendants."

31.

The Health Plan Non-Executive Subclass is defined as follows: "all persons

11

who reside in the United States, who during the applicable time period, (1) are participants in the BPA Health Plan and/or the UHC Health Plan, and (2) are individuals whose premium payments were deducted from their paychecks."

32.

The Dental and Vision Plan Subclass is defined as follows: "all persons who reside in the United States, who during the applicable time period, (1) are participants in the Dental and Vision Plan, and (2) are individuals whose premium payments were deducted from their paychecks."

33.

Plaintiff excludes from each class any entities currently in bankruptcy, any entity whose obligations have been discharged in bankruptcy, and any governmental agency or judicial officer. Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class which does not require individual inquiry to determine liability. All information necessary to determine the class members and the damages those members suffered is in Defendants' possession or control.

## **NUMEROSITY**

34.

The exact number of class and subclass members is unknown to Plaintiff at this time, but upon information and belief, the number is in excess of eighteen (18)

current or former employees, and such information will be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

35.

There are common questions of law and fact of general interest to the class and subclasses. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

(a)    Whether Defendants improperly failed to remit Plaintiffs' premium payments to the insurance carriers under the BPA Health Plan and/or the UHC Health Plan and/or the Dental and Vision Plan.

(b)    Whether members of the Participant Class have been damaged by Defendants' wrongful conduct.

(c)    Whether members of the Health Plan Executive Subclass have been damaged by Defendants' wrongful conduct.

(d)    Whether members of the Health Plan Non-Executive Subclass have been damaged by Defendants' wrongful conduct.

(e)    Whether members of the Dental and Vision Plan Subclass have been damaged by Defendants' wrongful conduct.

(f)    Whether any the Defendants breached their fiduciary duties to the members under 29 U.S.C. § 1132(a)(2)/(a)(3).

(g)    Whether the members should be awarded attorneys' fees and the costs associated with this action from Defendants and if so, in what amount.

## TYPICALITY

36.

The claims of the Representative Plaintiff are typical of the types of claims suffered by all members of the class in that all class members have suffered the loss of Plan benefits due to the actions/inactions of Defendants.

## COMMONALITY

37.

Each member was damaged by the actions/inactions of Defendants when Defendants failed to pay insurance premiums causing each member to unexpectedly lose insurance coverage and suffer losses.

## ADEQUATE REPRESENTATION

38.

Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Because Representative Plaintiff's claims are typical of the claims of the class, Representative Plaintiff, while pursuing his own claims against Defendants will benefit and assure

that the other members of the class will have their claims adequately represented. Plaintiff has retained class counsel competent to prosecute class actions and such class counsel are financially able to represent the class.

## **SUPERIORITY**

39.

The class action device is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiff class and subclasses rather than for the Plaintiff solely on an individual basis as the questions of law and fact are similar/identical for each member including the Representative Plaintiff. And because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members establishing incompatible standards of conduct for Defendants, prosecuting this case as a class action is the superior method for adjudication of this case.

40.

Questions of law and fact predominate over any questions affecting only individual members.

41.

All conditions precedent to the bringing of the putative class members' claims

asserted herein have occurred or have been performed.

42.

Alternatively, any condition precedent to the bringing of the putative class members' claims asserted herein that has not occurred or has not been performed should be excused as futile, as a matter of fact and/or law.

## <u>COUNT I – BREACH OF FIDUCIARY DUTIES:<br>29 U.S.C. §§ 1132(a)(2), (a)(3) - ALL DEFENDANTS</u>

43.

The allegations contained in Paragraphs 1 through 41 above are realleged and incorporated by reference as if fully set forth herein.

44.

The factual allegations detailed herein demonstrate that Defendants owed fiduciary duties to Plaintiffs with regard to their participation in the Plans and breached those duties.

45.

Specifically, Defendants, individually and collectively, exercised control over premium payments, which they kept and failed to correctly remit to the insurers. This resulted in the Plans being unable to fund the payment of benefits to participants and resulted in the termination of Plaintiffs' coverage and denial of valid claims.

46.

As a direct and proximate result of the breaches of the fiduciary duty to

16

Plaintiffs, Plaintiffs have been harmed because the Plan benefits to which Plaintiffs are entitled have not been realized due to Defendants' non-payment of premiums. Plaintiffs have suffered the cost of medical and/or dental and/or vision care expenses that would have been covered under the Plans but for Defendants' breaches, and they have suffered the loss of premiums paid but never remitted to the insurers. The Plans have suffered in their inability to pay benefits due to participants through a lack of insurance funding as a direct result of Defendants' breaches of fiduciary duty. Further, the employers and individual defendants have been unjustly enriched by their keeping/using ERISA-protected plan premiums/contribution dollars illegally.

47.

Pursuant to 29 U.S.C. §§ 1132(a)(2) & (a)(3), Defendants are liable to Plaintiffs for appropriate equitable relief for the damage caused by their breaches of fiduciary duty alleged in this Count.

## **COUNT II – ATTORNEYS' FEES – 29 U.S.C. § 1132(g) – ALL DEFENDANTS**

48.

The allegations contained in Paragraphs 1 through 47 above are realleged and incorporated by reference as if fully set forth herein.

49.

Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), Defendants are also liable to Plaintiffs for the costs and fees incurred in this action, because Defendants'

violations of ERISA and failure to remedy those violations have caused Plaintiffs to incur litigation costs and attorneys' fees to remedy the breaches herein.

50.

The Court should award Plaintiffs their reasonable attorneys' fees and the litigation costs and expenses of bringing this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court:

(a)    Certify Plaintiffs' case as a class action and/or allow Plaintiff to proceed on behalf of the Plans pursuant to 29 U.S.C. § 1132(a)(2);

(b)    Award Plaintiffs all appropriate equitable relief for the damages caused to them related to the loss of their Plan benefits and premium payments in breach of Defendants' fiduciary duties, and losses to the Plans, as detailed herein;

(c)    Award all applicable pre- and post-judgment interest;

(d)    Award Plaintiffs the reasonable costs and expenses of this action including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

(e)    Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted this 9th day of May, 2024.

*/s/ Nancy B. Pridgen*
Nancy B. Pridgen, Esq.
Georgia Bar No. 587949
PRIDGEN BASSETT LAW, LLC

18

138 Bulloch Avenue
Roswell, GA 30075
Phone:  404-551-5884
Fax:  678-812-3654
Email: nancy@pridgenbassett.com

*/s/  Beverly A. Lucas*
Beverly A. Lucas, Esq.
Georgia Bar No. 427692
LUCAS & LEON, LLC
Post Office Box 752
Clarkesville, Georgia 30523
Phone: 706-754-2001
Fax: 706-754-8085
Email: beverly@lucasandleon.com

*Attorneys for Plaintiff*